IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMISON WHITE, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 06CV536 |
| ) | |
| V. ) | |
| ) | |
| CREIGHTON UNIVERSITY, ) | ORDER AND MEMORANDUM ON |
| CREIGHTON UNIVERSITY SCHOOL OF ) | PLAINTIFF'S MOTION FOR |
| MEDICINE, CAM E. ENARSON, ) | TEMPORARY RESTRAINING ORDER |
| MICHAEL KAVAN, PH.D WILLIAM B. ) | AND FOR PRELIMINARY INJUNCTION |
| JEFFRIES, PH.D. FLOYD KNOOP, PH.D ) | |
| KRISTEN DRESCHER, PH.D. ) | |
| MARGARET SCOFIELD, M.D. ) | |
| VIRGINIA C. AGUILA, ROBERT G. ) | |
| BONEBRAKE, M.D. ERICA K. ) | |
| CICHOWSKI, M.D. SADE ) | |
| KOSOKOLASAKI, PH.D. JOSEPH ) | |
| KNEZETIC, PH.D. THOMAS E. ) | |
| PISSARRI, M.D. HENRY A. SAKOWSKI ) | |
| II, and M.D. TERENCE L. ZACH, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff Jamison White ("White"), in his Motion for Temporary Restraining Order and for Preliminary Injunction (Filing No. 2), requests temporary injunctive relief ordering Creighton University Medical Center to admit him as a second-year medical student starting August 14, 2006. For the reasons set forth below, the motion is denied.

**Facts**

For purposes of the pending motion, the Court finds the following facts. White was accepted as a student at Creighton University Medical Center, and started as a first year medical student ("M1") in the Fall of 2004. He subsequently failed two classes during the 2005 spring semester. Defendants allowed White to remain in medical school to repeat

his M1 year and strongly suggested that he seek a psychiatric evaluation and follow whatever treatment plans were suggested.[1] White did seek a psychiatric evaluation, was diagnosed as having Attention-Deficit Hyperactivity Disorder ("ADHD"), and was prescribed medicine to help deal with that disease. White experienced trouble with that medication, or later variations of it, including severe headaches and lack of concentration.

White finished his second M1 fall semester, failing one class. Despite this, he was allowed to remain at school to complete the spring 2006 semester. About that time, White sought the advice of Dr. Daniel R. Wilson. It was Dr. Wilson's opinion that White did not have ADHD, but instead had Post-Traumatic Stress Disorder ("PTSD"). Dr. Wilson further opined that White's misdiagnosis and the trouble with his medication directly affected White's academic performance. After failing another class in the 2006 spring semester, White was dismissed from school for poor academic performance.

White followed the grievance procedure in the school's student handbook, but his dismissal was ultimately upheld. White filed his Complaint (Filing No. 1) and a Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 2) on August 8, 2006. White filed a Request for Hearing on Motion for Temporary Restraining Order (Filing No. 6) on August 9, 2006; the request was granted the same day (Filing No. 7); and the hearing was scheduled for August 10, 2006. All parties received notice and appeared through counsel at that hearing.

**Standard for Preliminary Injunction**

This Court, when faced with a motion for a preliminary injunction, is governed by the

---

[1] There is debate as to whether Defendants forced White into treatment as a condition of his return, or whether they merely suggested it. For purposes of this motion, this debate need not be settled, because my conclusion would be the same regardless of whether White's treatment was suggested or mandated.

case of *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981). *Dataphase* set forth four factors to help guide a trial court's analysis when addressing a motion for a preliminary injunction: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant if the injunctive relief were denied; (3) the balance between the harm to the movant and the harm to the other litigants; and (4) the public interest in the preliminary injunction. *Id.* at 114. "The burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). Further, it is important to note that this is a balancing test in which "[n]o single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Id.* (quoting *Calvin Klein Cosmetic Corp., v. Lenox Lab, Inc.,* 815 F.2d 500, 503 (8th Cir. 1987)).

### Plaintiff's Motion for Preliminary Injunction

In the present case, balancing the four *Dataphase* factors together favors Defendants, and White has failed to meet his burden of establishing the propriety of a preliminary injunction.

**A. Likelihood of Success on the Merits**

For purposes of this motion, White has made two claims—Claim I is a claim of discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Claim II is a claim of failure to accommodate under the Rehabilitation Act, 29 U.S.C § 794 *et seq.*[2] For both of these claims, White has failed to show a likelihood of

---

[2] White's complaint also asserts two other state causes of action that potentially will be governed by a grant of supplemental jurisdiction—a breach of contract claim (Claim III) and an intentional infliction of emotional distress claim (Claim IV). For purposes of this motion, these two state claims are not considered.

success on the merits, and this first *Dataphase* factor weighs in favor of the Defendants.

Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations by prohibiting any "person who owns, leases, or operates a place of public accommodation from discriminating against an individual on the basis of that individual's disability." *Amir v. St. Louis University*, 184 F.3d 1017, 1027 (8th Cir. 1999) (citing 42 U.S.C. § 12182(a) (1994)). A plaintiff alleging discrimination under Title III must demonstrate four elements. First, the plaintiff must establish that he is disabled within the meaning of the ADA. Second, the plaintiff must show that the defendant is a private entity that owns, leases, or operates a place of public accommodation. Third, the plaintiff must show that the defendant discriminated against the plaintiff on the basis of his disability. Finally, the plaintiff must show that the defendant failed to make a reasonable modification or modifications that would accommodate the plaintiff's disability; however, the defendant does not need to make a modification that fundamentally alters the nature of the defendant's public accommodation. See *id*. For purposes of this motion, I find that White has not established a likelihood of success on the third element (that the Defendants discriminated against him because of his alleged disability), and the fourth element (that the Defendants failed reasonably to accommodate the Plaintiff).

For the first element, a plaintiff must show that he is disabled according to the ADA. A person is disabled within the meaning of the ADA if he can show three factors: (1) that he has a physical or mental impairment; (2) that this physical or mental impairment substantially limits him; and (3) that the impairment substantially limits him in the pursuit of a major life activity. *See id*.

For purposes of this motion, I find that White has met his burden with respect to this first element. His own assertions that his academic difficulties were due to a misdiagnosis of ADHD and an episode of depression brought on by PTSD, combined with the expert opinion of Dr. Daniel R. Wilson (Plaintiff's Exhibit 13), sufficiently demonstrate that he likely will be able to show that he had a disability; that his disability substantially limited him; and that this substantial limitation affected his major life activity of learning. Therefore, I find it is likely that White fell within the definition of "disabled" under the ADA during the relevant period.

The second element a plaintiff must show is that the defendant is a place of public accommodation. For purposes of this motion, it is undisputed that Creighton University Medical Center is a place of public accommodation. Therefore, White has also shown that he is likely to succeed on this second factor.

The third element a plaintiff must show is discrimination—the plaintiff must show that the defendant discriminated against the him because of his disability. Because White has not provided any evidence that his disability was the motivating factor behind Defendants' action, he fails to show a likelihood of success on this point.

White has offered no evidence that his dismissal was motivated by his disability, and there is no evidence on the record to support a charge of discrimination. When Defendants learned of White's disability, they did not force him to leave the school. Rather, Defendants provided White with many academic accommodations. They helped White get a psychiatric evaluation, and asked that White try to remedy his disability through medication.[3] Further, after White failed the 2004–05 academic year, Defendants allowed

---

[3] White states that he was misdiagnosed by the Defendants' physicians, and contends that because of this misdiagnosis he suffered symptoms that exacerbated his disability. Even if

him to repeat his entire first year of medical school. Finally, when White failed a class his fall semester of his second M1 year, he was allowed to remain in school for the spring semester despite not having completed all the requirements of his fall semester.

It is White's contention that any other first year medical student who received a grade similar to White's would be allowed to take a make-up test, and therefore the Defendants are discriminating against him. However, White has not presented any evidence to support that contention.[4] White has not shown any similarly situated person who received better treatment. For purposes of this motion, it is the finding of the Court that White was treated at least as well as any similarly situated M1 student, and therefore White failed to demonstrate a likelihood of success on the merits of his ADA claim.

The last element of a claim of discrimination under the ADA is a failure to provide reasonable accommodations. "The ADA requires a provider of a public accommodation to modify its program to accommodate the needs of a disabled person unless such a modification will substantially alter the nature of the program or such a modification constitutes an undue burden." *Amir*, 184 F.3d at 1028. Specifically in the education context, "[w]hen the accommodation involves an academic decision, "[courts] should show great respect for the faculty's professional judgment." *Id.* Because I find that Defendants have already met what the ADA requires through the several reasonable accommodations

---

this claim were true, White still fails to show any discriminatory purpose. Indeed, this contention tends to support the opposite notion—that Defendants were attempting to *help* White by trying to find ways to keep him in school.

[4]White contends in his Complaint (Filing No. 1) that "[u]pon information and belief, Defendant has allowed other students who have worse academic records to remain as students in the School." (Filing No. 1, 12). However, absent some evidence supporting this contention, these assertions do not persuade the Court to believe that White has been discriminated against because of his disability.

made, White also failed to show a likelihood of success on this final element.[5]

As stated above, Defendants made several academic accommodations, including helping White into therapy, allowing him to repeat his first year, and allowing him to continue the M1 program after he failed a class in the fall 2005 semester. Showing the appropriate respect for the Defendants' professional judgment, I find that these accommodations struck a reasonable balance between accommodating White's disability while maintaining the academic integrity the program requires to ensure the training and education of competent and capable physicians. White has failed to provide any evidence explaining why these accommodations were not sufficient under the ADA, and has therefore failed to meet his burden of showing the likelihood of success on the merits.

**B. Irreparable Harm to Movant**

White contends that if he is not allowed to start his classes on Monday, he will be precluded from starting his second year of medical school until the 2007–08 academic year. He argues that this constitutes an irreparable harm because, if it is later determined that he was wrongfully dismissed, he will have a great deal of "catching-up" to do before he can start his second year. While I find that White will suffer some harm, it is not of the type that can be described as irreparable.

---

[5] As noted above, White also alleges discrimination and a failure to accommodate that violate the Rehabilitation Act. It has been noted by the Eighth Circuit that "Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff." *Amir*, 184 F.3d at 1029 n.5 (emphasis in original) (citing Maddox v. University of Tennessee, 62 F.3d 843, 846 (6th Cir. 1995)). The court in *Amir* found that because it rejected the plaintiff's ADA claim, "[t]he heightened requirements contained in the Rehabilitation Act preclude [plaintiff's] recovery on this [Rehabilitation Act] cause of action." *Id*. Similarly, I find that my discussion and finding that White fails to meet his preliminary injunction burden for his ADA claim precludes the need for a separate discussion of his Rehabilitation Act claim.

Dr. Michael Kavan, the Dean of Student Affairs for Creighton University Medical Center, testified that it is not unusual for students to take a year off between first and second year of medical school. In many of these instances, whether the absence is due to personal or professional reasons, the student will stay abreast of classes by starting a regiment of review of the material that the student will need to know to start the second year. Dr. Kavan stated that the Medical School helps design such review programs, so the student is not completely without guidance. While Dr. Kavan would not say that every student who takes time off between first year and second year succeeds, he did state some students who return do very well and do graduate.

If it is later determined that White was wrongfully dismissed and he is reinstated in Medical School, he has the option of reviewing the material to remain current in his studies. While I recognize this would constitute a good deal of effort on his part, the type of damage he will potentially suffer is not irreparable, and could be compensated through monetary damages. Therefore, this factor weighs in favor of the Defendants.

**C. Balance of Harms Between Plaintiff and Defendants**

The balance of harm between White and the Defendants also weighs in favor of the Defendants. White argues that Creighton University Medical Center will suffer no harm if White is admitted for the 2006–07 academic year because, if White does not return, his slot in the class will remain empty. In other words, White contends that Creighton does not intend to replace him with another second year medical student. While Defendants do not deny the absence of economic loss, they do have an interest in maintaining the academic integrity of the medical school program. The Defendants would suffer significant harm if this Court intruded on their judgment as professional medical school administrators by

requiring them to admit a student who did not satisfy the school's standards. Therefore, the balance of harms weighs in favor of the Defendants.

**D. Public Interest**

The final *Dataphase* factor requires this Court to consider the effect its decision will have on the public interest. I find that the public interest will be best served if Creighton University Medical Center is allowed to maintain its own academic policies and procedures, and this final factor also weighs in favor of the Defendants.

The public has an interest in the education and training of physicians—an interest in the preservation of certain standards to make sure that people trained as physicians are competent and capable when attending to the public's serious health needs. This public interest is best served when a medical school is allowed to maintain its academic criteria according to its own judgment. It would go against that interest for a court to substitute its judgment for that of medical professionals serving as medical school administrators in matters such as admission and advancement criteria for medical students, absent compelling evidence that those standards are a pretext for discrimination. The final *Dataphase* factor also weighs in favor of the Defendants.

IT IS ORDERED:

The Plaintiff's Motion for Temporary Retraining Order and Preliminary Injunction (Filing No. 2) is denied.

DATED this 11th day of August, 2006.

                                      BY THE COURT:

                                      S/Laurie Smith Camp
                                      United States District Judge