IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMISON WHITE, | ) | CASE NO. 8:06CV536 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | ON DEFENDANTS' AMENDED |
| CREIGHTON UNIVERSITY, | ) | MOTION TO DISMISS |
| CREIGHTON UNIVERSITY SCHOOL | ) | |
| OF MEDICINE, CAM E. ENARSON, | ) | |
| MICHAEL KAVAN, WILLIAM B. | ) | |
| JEFFRIES, FLOYD KNOOP, KRISTEN | ) | |
| DRESCHER, MARGARET SCOFIELD, | ) | |
| VIRGINIA C. AGUILA, ROBERT G. | ) | |
| BONEBRAKE, ERICA K. CICHOWSKI, | ) | |
| SADE KOSOKO-LASAKI, JOSEPH | ) | |
| KNEZETIC, THOMAS E. PISSARRI, | ) | |
| HENRY A. SAKOWSKI II, and | ) | |
| TERENCE L. ZACH, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on the Individual Defendants' (Cam Enarson, Michael Kavan, William Jeffries, Floyd Knoop, Kristen Drescher, Margaret Scofield, Virginia Aguila, Robert Bonebrake, Erica Cichowski, Sade Kosoko-Lasaki, Joseph Knezetic, Thomas Pissarri, Henry Sakowski II, and Terence Zach), Amended Motion to Dismiss (Filing No. 21). For the reasons set forth below, the motion is granted, and the Plaintiff's Complaint (Filing No. 1), is dismissed as to all of the aforementioned Individual Defendants.

**Procedural History**

On August 8, 2006, the Plaintiff Jamison White ("White"), filed a Complaint with this Court, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, and asserting state

law contract and intentional infliction of emotional distress ("IIED") causes of action. He named as defendants Creighton University, Creighton University School of Medicine, and fourteen individuals who serve as teachers or administrators at Creighton University School of Medicine. On September 27, 2006, the Individual Defendants filed a Motion to Dismiss (Filing No. 17), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and a brief in support of that motion (Filing No. 18). The next day, the Individual Defendants sought leave of this Court to amend their motion, which was granted, and on September 29, 2006, they filed the Amended Motion to Dismiss.[1] White has filed no brief in opposition to the Amended Motion to Dismiss.[2]

## Standard of Review

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must assume that all of the facts alleged in the complaint are true, and must liberally construe the complaint in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss should not be granted unless it appears, beyond a doubt, that the plaintiff can prove no set of facts which would allow relief. *Id.* Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, some insuperable bar to relief. *Id.*

---

[1] The Amended Motion to Dismiss merely adds two individuals left out of the original Motion to Dismiss; consequently, the reasoning and arguments from the previously filed brief in support are applicable to the Amended Motion to Dismiss.

[2] According to the local rules followed by this Court, "Failure to file an opposing brief shall not be considered to be a confession of the motion, but shall preclude the nonmoving party from contesting the moving party's statement of facts." NECivR 7.1(b)(1)(c).

**Facts**

Due to the nature of the pending motion, I assume that all of the facts alleged in the Complaint are true. The following is a brief summary of the factual allegations contained in the Complaint.

White was accepted by Creighton University School of Medicine, and started as a first year medical student ("M1"), in the Fall of 2004. Due to some academic difficulty during his first semester, White was referred to the Creighton Student Psychological Counseling Department. He was diagnosed with Attention-Deficit Hyperactivity Disorder ("ADHD"), and was treated with Ritalin. White passed all of his classes that Fall. Filing No. 1, 4–5.

During the 2005 Spring semester, White experienced academic difficulties due to his medication, and he consequently failed two classes. The Defendants allowed White to remain in medical school to repeat his M1 year, but required White to seek a psychiatric evaluation and to follow whatever treatment plans were suggested. White did seek a psychiatric evaluation, was again diagnosed as having ADHD, and had his medication increased. The increase in the medication caused White to experience several side effects, including severe headaches and lack of concentration. Filing No. 1, 5–6.

White finished his second M1 Fall semester failing one class. About this time, White sought the advice of Dr. Daniel R. Wilson. It was Dr. Wilson's diagnosis that White did not have ADHD, but instead had Post-Traumatic Stress Disorder. Dr. Wilson further opined that White's mis-diagnosis and the trouble with his medication directly related to White's poor academic performance. White was allowed to remain at school to complete his Spring semester. Filing No. 1, 6–7.

During the months of January and February of 2006, White attempted to withdraw himself from his medications. However, this caused severe headaches and body pains. In one of his Spring classes, Host Defense, White received a failing score of 64.3%. Pursuant to the grading system set forth in the syllabus for the class, his score should have been a 64.6%. Although both were failing grades for the course, according to the student handbook a score over 64.5% would have entitled White to retake the final exam. However, since his grade was recorded as a 64.3%, he was not allowed the opportunity to retake his final and was issued a failing final grade. Consequently, White was told he needed to appear before the Advancement Committee to determine his future at the medical school. Filing No. 1, 7–8.

White wanted to pursue the grade grievance procedure as set forth in the student handbook. However, he was told by Dr. Floyd Knoop, the M1 Component Director for Creighton University School of Medicine, that the school does not follow the handbook's stated procedure. Further, Dr. Knoop told White that he would not be allowed to continue with his grade grievance. Because of Dr. Knoop's statements, White believed that he would not be able to go forward with the grade grievance procedure, and consequently took no further action in that regard. Filing No. 1, 10–11.

White appeared before the Advancement Committee on April 19, 2006. The proceedings started before all members of the Advancement Committee were present. White was not allowed to read a prepared statement. It was inferred at the proceedings that White had lied about the severity of his condition. The meeting lasted for approximately twenty minutes, after which White was dismissed from school. Filing No. 1, 11.

White appealed his dismissal, and the Review Committee upheld the dismissal on May 8, 2006. White met with Dr. Cam Enarson, Dean of Creighton University School of Medicine, to appeal the decision of the Review Committee. Dean Enarson upheld the dismissal. During the review process, White finished his Spring semester, passing the rest of his classes. Filing No. 1, 11–12.

## Discussion

### 1. Counts I and II—Title III and the Rehabilitation Act

Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations by prohibiting any "person who owns, leases, or operates a place of public accommodation from discriminating against an individual on the basis of that individual's disability." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999) (citing 42 U.S.C. § 12182(a) (1994)). White alleges, in Count I of his Complaint, that Creighton University, Creighton University School of Medicine, and the Individual Defendants, in their individual and official capacities, are liable to White for violations of Title III of the ADA. In this regard, White alleges that both Creighton University and Creighton University School of Medicine qualify as "place[s] of public accommodation under the ADA and the applicable federal regulations." Filing No. 1, 2. As to the Individual Defendants, it is alleged that each "is an individual and is employed . . . by defendant school," Filing No. 1, 2–3, with no allegation that any of the Individual Defendants own, lease, or operate a place of public accommodation.

It is established case law in the Eighth Circuit that, in the absence of a claim that an individual owns, leases, or operates a place of public accommodation, "there is no

colorable claim under Title III of the ADA." *Valder v. City of Grand Forks*, 217 F.R.D. 491, 494 (D.N.D. 2003) (citing *Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1036 (8th Cir. 1998) ("[The claimant's] Title III claim against the St. Louis police officers . . . is even more obviously infirm, because there is not a colorable claim that the officers owned, leased, or operated the [place of public accommodation] in question. The claim therefore necessarily fails on its face.")). Therefore, on the face of White's Complaint, the Title III claim fails as to all of the Individual Defendants.

Moreover, even if the pleadings were amended to allege that the Individual Defendants "operate"[3] Creighton University or Creighton University School of Medicine (i.e., operate a place of public accommodation), White's Title III claim still fails as to the Individual Defendants. Although an apparent issue of first impression in the Eighth Circuit, other circuits have found that employees and administrators do not "operate" a university so as to open themselves to ADA liability. *See Emerson v. Thiel Coll.*, 296 F.3d 184 (3rd Cir. 2002). In *Emerson*, a panel of the Third Circuit Court of Appeals did not believe that "Congress intended to impose personal liability upon each person involved in [the claimant's] education. Rather, the institution has the power to make accommodations and thus it operates the place of public accommodation and is the proper defendant." *Id.* at 189 n.3 (internal citation omitted). The *Emerson* court noted that its finding comported with principles of statutory interpretation by construing the term "operate" to mean its literal dictionary definition of "to control or direct the functioning of" and "to conduct the affairs of."

---

[3] I do not believe that it is possible to glean from the Complaint an allegation that the Individual Defendants own or lease Creighton University or Creighton University School of Medicine, and therefore limit my own analysis accordingly.

*Id.* at 189 (citing *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995)). That court also noted that its finding was consistent with other circuits' interpretations of those Congress intended to be liable under the ADA. *Id.* (citing *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2nd Cir. 2001); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *rev'd on other grounds*, *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912–13 (7th Cir. 2003) ("[T]he ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations.")).

I agree with the Third Circuit's conclusion that employees and administrators of a university do not open themselves to ADA liability simply because they are involved in a student's education. In this case, it is Creighton University and/or Creighton University School of Medicine that potentially operate a place of public accommodation; consequently, these are the only named defendants that may be subject to liability under the ADA.[4]

---

[4] For similar reasons, the Rehabilitation Act cause of action is dismissed. It has been noted by the Eighth Circuit that "Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff." *Amir*, 184 F.3d at 1029 n.5 (emphasis in original) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 (6th Cir. 1995)). *See also Emerson*, 296 F.3d at 189 (citing 28 C.F.R. § 36.103) ("[T]he Rehabilitation Act and the ADA generally are interpreted consistently."). While Title III applies to places of public accommodation, the Rehabilitation Act applies to programs or activities receiving federal financial assistance. 29 U.S.C. § 794(a). In other words, the Rehabilitation Act applies to federal financial assistance recipients. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605–06 (1986). In this case, White alleges that Creighton University and Creighton University School of Medicine receive federal funds. Filing No. 1, 2. However, he makes no such averment as to the Individual Defendants. Because there is no claim that the Individual Defendants receive federal funding, White does not state a claim against them under the Rehabilitation Act. *See Emerson*, 296 F.3d at 190.

**2. Count III—Breach of Contract**

The Individual Defendants also argue that White's breach-of-contract cause of action against them should be dismissed because the allegations only support the existence of a contract between White and Creighton University. While it is true that "[t]he relationship between a *university* and a student is contractual in nature," *Corso v. Creighton Univ.*, 731 F.2d 529 (8th Cir. 1984) (emphasis added), to survive the Individual Defendants' current motion, White must sufficiently plead a prima facie cause of action against the Individual Defendants. Under Nebraska law, to assert a prima facie breach-of-contract cause of action, "the plaintiff must plead . . . the existence of a promise, its breach, damage, and compliance with any conditions precedent that actuate the defendant's duty." *Gibb v. Citicorp Mortg., Inc.*, 518 N.W.2d 910, 922 (Neb. 1994).

I have considered the allegations made in Count III[5] and I find that White's Complaint, construed liberally, does not allege facts sufficient to support a breach-of-contract cause of action against the Individual Defendants. Most notably, White has not pled the first element of a prima facie case—the existence of a promise between himself and the Individual Defendants. Rather, White's Complaint only alleges the existence of a

---

[5]Count III consists of five paragraphs, ¶¶55–59. Filing No. 1, 15–16. Paragraph 55 incorporates by reference all previous paragraphs; paragraph 56 asserts a claim against Creighton University for actions effected "*by and through*" Creighton University School of Medicine and the Individual Defendants; paragraph 57 is worded similarly to paragraph 56; paragraph 58 alleges that because of the Defendants' actions, White had no duty to further pursue the grade grievance procedure; and paragraph 59 states that as "a consequence of *Defendant's* breach of contract, Plaintiff has suffered the damages described herein." (emphasis added).

contract between himself and Creighton University.[6] Therefore, to the extent it existed, I dismiss White's breach-of-contract claim against the Individual Defendants.

### 3. Count IV—IIED

Under Nebraska law, a claimant must show three elements to establish a prima facie case for IIED. Those elements are "(1) the defendant's intentional or reckless conduct (2) which is so outrageous and so extreme that the conduct goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community and (3) which causes emotional distress so severe that no reasonable person is expected to endure that severe emotional distress." *Dale v. Thomas Funeral Home, Inc.*, 466 N.W.2d 805, 807–08 (Neb. 1991) (citing *Pick v. Fordyce Co-op Credit Ass'n*, 408 N.W.2d 248 (Neb. 1987); *Gall v. Great Western Sugar Co.*, 363 N.W.2d 373 (Neb. 1985)). In this case, the Individual Defendants argue that White's Complaint fails to allege facts to support a prima facie IIED claim, and ask that the IIED claim as to the Individual Defendants be dismissed.

The Complaint sets forth four instances of allegedly improper conduct on the part of the Individual Defendants to support the IIED claim. White alleges that one or more of the Individual Defendants: (1) suggested that White was not truthful about his physical symptoms; (2) advised White that he would not be allowed to follow the grade grievance procedure; (3) forced White to prepare for his Advancement Committee hearing before he was allowed to finish pursuing his grade grievance procedure; and (4) dismissed White from Creighton University School of Medicine. Filing No. 1, 16–17.

---

[6]White alleges the sources of the contractual obligations are the student handbook and the syllabi distributed for each class. Filing No. 1, 4.

Accepting as true all relevant allegations in the Complaint, and construing all inferences most favorably to White, I conclude that White has failed to establish a prima facie case for an IIED claim and, therefore, his claim must fail as a matter of law. None of the alleged actions of any of the Individual Defendants, if true, rises to a level of conduct so outrageous, extreme, atrocious, and utterly intolerable that an average member of the community would declare the conduct to be outrageous. *See Heitzman v. Thompson*, 705 N.W.2d 426, 431 (Neb. 2005).

IT IS ORDERED:

1. The Individual Defendants' Motion to Dismiss (Filing No. 17), is dismissed as moot;

2. The Individual Defendants' Amended Motion to Dismiss (Filing No. 21), is granted; and

3. The Plaintiff's Complaint (Filing No. 1), is dismissed without prejudice as to Cam Enarson, Michael Kavan, William Jeffries, Floyd Knoop, Kristen Drescher, Margaret Scofield, Virginia Aguila, Robert Bonebrake, Erica Cichowski, Sade Kosoko-Lasaki, Joseph Knezetic, Thomas Pissarri, Henry Sakowski II, and Terence Zach.

DATED this 27th day of November, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge