**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| JAMISON WHITE, | ) | CASE NO. 06CV536 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| v. | ) | **ON DEFENDANTS' MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| CREIGHTON UNIVERSITY and | ) | |
| CREIGHTON UNIVERSITY SCHOOL | ) | |
| OF MEDICINE, | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 46).  The Motion is supported by a brief and index of evidence.  The Plaintiff, Jamison White ("White"), has failed to respond to the Motion.  For the reasons stated below, the Defendants' Motion will be granted and White's action will be dismissed, with prejudice.

**FACTS**

Defendants, Creighton University and Creighton University School of Medicine ("Creighton"), presented a Statement of Undisputed Facts with pinpoint citations to the evidentiary record, in full compliance with NECivR 56.1(a).  (Defendants' Brief, Filing No. 47, pp. 3-9).  Because White has failed to respond, Creighton's statement of facts is adopted for purposes of the pending Motion (see NECivR 56.1(b)(1)), and is summarized, below.

Creighton is a private university operating several undergraduate and professional colleges or schools, including the School of Medicine, which is not a separate legal entity, but a part of the University.  On August 15, 2004, White began his first year of medical studies, known as M1, at the School of Medicine.

The grades of all students at the School of Medicine were, at all relevant times, monitored by Linda Pappas, the School's Academic Success Coordinator. Pappas reported to Dr. Michael Kavan, the School's Associate Dean for Student Affairs. On October 4, 2004, Dr. Kavan and Pappas wrote to White because Pappas's review of White's grades indicated that he was at the lower range of a passing grade in some courses. The letter gave six specific suggestions and offered the services of Dr. Kavan and Pappas to assist White in his studies. Later in October of 2004, Pappas met with White and encouraged him to seek help through Creighton's Counseling Center. Pappas also arranged tutoring for White. In November of 2004, White contacted Creighton's Counseling Center, and received counseling from Thomas Grandy, Ph.D. From October 12, 2004, to April 25, 2006, Pappas counseled White on more than 40 occasions, usually in person and occasionally by telephone.

In the spring semester of 2005, White failed two courses, Host Defense and Molecular & Cell Biology. Under the School of Medicine Student Handbook, these failures required that White's file be reviewed by the School's Advancement Committee. This Committee was composed of faculty and student representatives, and was charged with making decisions concerning remediation and/or consequences for students who failed medical school courses. Dr. Kavan sat on this Committee as an ex-officio member.

On March 7, 2005, Dr. Kavan sent White a letter notifying him of his opportunity to address the Advancement Committee. On April 20, 2005, the Advancement Committee met with White, who addressed the Committee. After consideration of White's presentation, the Committee determined that White would be allowed to repeat his M1 year during 2005-06; that he should be evaluated by psychiatrist Michael Sedlacek, MD; and

2

that White should continue to work with Linda Pappas.  In May of 2005, White was evaluated by Dr. Sedlacek and continued to receive counseling from Dr. Thomas Grandy, a Creighton psychologist.

On August 15, 2005, White began to repeat his M1 year.  White failed the Anatomy course in the fall semester of 2005, and his situation again came before the School's Advancement Committee.  On January 17, 2006, the Advancement Committee allowed White to continue his education on certain conditions, *i.e.*, if he passed all his spring 2006 courses, he would be permitted to retake the Anatomy course in the summer of 2006; he continue to work with Linda Pappas; and he follow the recommendations of his physician.

On March 6, 2006, White failed the Host Defense Course, which again brought his situation to the attention of the Advancement Committee.  White's grade in Host Defense was 64% – below the 65% needed to make him eligible to retake the final exam.  All Host Defense grades were calculated by computer, via "Micrograde," Chariot Software Group's "Grade Book" program.  Although Medical School students could file a grievance contesting a failing grade, White did not file a grievance with respect to his failing grade in Host Defense.

On April 19, 2006, White made a presentation to the Advancement Committee and it determined that he should be dismissed from the School of Medicine due to his poor academic performance.  White requested that the Committee's decision be reviewed by the School of Medicine Review Committee, an ad hoc committee composed of faculty and student members and charged with reviewing the proceedings and decisions of the Advancement Committee.  Dr. Kavan was a non-voting member of that Committee. The

Review Committee heard a presentation from White and voted to uphold the decision of the Advancement Committee regarding White's dismissal.

The final decision on dismissal or retention of a student lay with the Dean of the School of Medicine. On July 3, 2006, Dr. Cam Enarson, Dean of the School of Medicine, reviewed White's situation, and adopted the recommendation that White be dismissed from the School of Medicine.

The decisions of the Advancement Committee, the Review Committee, and Dr. Enarson were based solely on White's academic performance, and were not influenced by White's mental or physical condition or any alleged disability. Dr. Enarson concluded that adherence to the academic requirements of the School of Medicine was necessary to maintain the professional standards of the School, and that relaxing the requirements for White would undermine those standards.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005))*.* The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

White's Complaint (Filing No. 1) asserts causes of action under (1) the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; (2) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; (3) contract; and (4) the tort of "intentional infliction of emotional distress."  In 2006, White sought a temporary restraining order and preliminary injunction requiring Creighton to readmit him to the Medical School.  (Filing No. 2).  The motion was denied, after an

evidentiary hearing.  (Memorandum and Order Denying Motion for Temporary Restraining Order and for Preliminary Injunction, Filing No. 13).

Although White has not dismissed his action, he appears to have abandoned his claims, having presented no response to Creighton's Motion for Summary Judgment. Because White has failed to come forward with any evidence or responsive brief in support of his claims to show that there is any genuine issue for trial, Creighton's Motion will be granted and White's Complaint will be dismissed, with prejudice.

IT IS ORDERED:

1.     The Defendants' Motion for Summary Judgment (Filing No. 46) is granted;

2.     The Plaintiff's Complaint is dismissed, with prejudice; and

3.     A separate Judgment will be entered.

DATED this 3rd day of January, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge